118 T.C. No. 2

UNITED STATES TAX COURT

BARRY R. DOWNING AND MARY A. DOWNING, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2217-00L.                    Filed January 7, 2002.

        Petitioners (Ps) filed a return for 1995 in which
they correctly reported their tax liability but did not
pay the tax owed.  Ps included $5,000 and an offer in
compromise in which they offered to pay that amount in
full settlement of the $32,561 tax they owed.

        Respondent (R) misplaced Ps' offer in compromise
for about 1 year.  R did not accept that offer in
compromise or four similar offers in compromise made by
Ps because R believed R could collect a substantially
larger amount of Ps' 1995 tax liability.

        R issued to Ps a notice of intent to levy.  Ps
requested and received a hearing on the proposed
collection action under sec. 6330, I.R.C.  Ps contended
that they had reasonable cause for their failure to pay
tax and requested that interest be abated because R had
misplaced their offer in compromise for 1 year.  R
issued a notice of determination to Ps stating that
interest would not be abated and that collection would
proceed.

Held:  We have jurisdiction under sec. 6330(d)(1)(A), I.R.C., to review R's determination to proceed with collection of the addition to tax under sec. 6651(a)(2), I.R.C.

Held, further, Ps had no reasonable cause for failing to pay their 1995 income tax, and thus are liable for the addition to tax for failure to pay tax under sec. 6651(a)(2), I.R.C.

Held, further, R's failure to abate interest was not an abuse of discretion.

Barry R. Downing and Mary A. Downing, pro se.

Edwina L. Charlemagne, for respondent.

COLVIN, Judge:  The petition in this case was filed under section 6330(d)[1] seeking our review of a determination by respondent's Appeals officer that respondent's proposed collection action may proceed.  The issues for decision are:

1.  Whether we have jurisdiction under section 6330(d)(1)(A) to review respondent's determination to proceed with collection of the addition to tax under section 6651(a)(2).  We hold that we do.

2.  Whether petitioners had reasonable cause for not paying their 1995 income tax.  We hold that they did not.

---

[1]  Section references are to the Internal Revenue Code as amended.

3. Whether respondent's failure to abate interest for petitioners' 1995 tax year was an abuse of discretion.[2] We hold that it was not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners lived in North Carolina when they filed the petition in this case. In 1995, petitioners sold and received payment for rental residential property in Virginia that they had depreciated. The sale price was $201,500, and petitioners' basis was $86,500. Petitioners used the proceeds from the sale to pay credit card debts. Petitioners did not receive a statement at closing showing the amount of sale proceeds from the house that would be reported to the Internal Revenue Service (IRS).

Petitioners timely filed their 1995 income tax return. On it, they reported that they owed income tax of $32,561 after withholding, in part because of depreciation recapture and capital gains resulting from the sale of the rental property. When petitioners filed the return, they enclosed $5,000 and an offer in compromise in which they offered to pay that amount in full settlement of the $32,561 they owed for 1995. At that time, petitioners had net assets of about $44,000, including cash and bank accounts of $9,500, real estate (including a one-half

_____

[2] Respondent concedes that the Tax Court has jurisdiction to review whether to abate interest. See Katz v. Commissioner, 115 T.C. 329, 340-341 (2000).

interest in rental property Barry Downing (petitioner) jointly owned with his brother) with equity of about $29,000, life insurance with a loan value of $1,000, and vehicles with equity of about $4,500. Petitioners did not consult an accountant or other tax professional concerning their 1995 return.

Respondent misplaced petitioners' offer in compromise for about 1 year; i.e., from April 15, 1996, to April 15, 1997. Respondent also erroneously applied the $5,000 payment towards petitioners' 1995 tax liability, but, upon discovering the error, returned the $5,000 with interest to petitioners on April 16, 1997.

Respondent did not issue a notice of deficiency to petitioners for 1995. In 1996 and 1997, petitioners made the following offers in compromise as full settlement of their 1995 income tax liability of $32,561, plus the addition to tax for failure to pay and interest:

| Date | Amount of offer |
|------|-----------------|
| Apr. 11, 1996 | $5,000 |
| Nov. 8, 1996 | 5,000 |
| Dec. 3, 1996 | 4,398 |
| Apr. 28, 1997 | 7,850 |
| June 3, 1997 | 6,385 |

Respondent did not accept any of these offers because respondent's revenue officer believed that respondent could collect about $38,635 from petitioners' assets.

The instructions for Form 656, Offer in Compromise, which petitioners used to prepare their offers in compromise in 1996 and 1997, state how to calculate an acceptable offer in compromise:

How to Figure An Acceptable Offer

An acceptable offer must include all amounts available from the following sources: * * *

(1) The liquidating value of your assets (value if you are forced to sell) minus debts against specific assets that have priority over IRS.

*     *     *     *     *     *     *

(2) The amount we could collect from your present and future income.  Generally, the collectible amount is your income minus necessary living expenses.  We usually consider what we can collect over five years.

*     *     *     *     *     *     *

(3) The amount collectible from third parties.  We may be able to collect part or all of the amount you owe from third parties through the trust fund recovery penalty or transferee liabilities (assets you transferred below market value or transferred assets you still use).

*     *     *     *     *     *     *

(4) Assets or income that are available to you but may not be available to IRS for direct collection action, e.g., property outside the United States.

*     *     *     *     *     *     *

(5) Minimum offer (total items (1) through (4))

$ _____

If your offer is less than the minimum offer
amount from item (5), we can't process your offer. * * *

In November 1998, respondent advised petitioners that the minimum acceptable offer to pay their remaining 1995 tax liability was $22,837, payable in 24 monthly installments of $951.55, not including interest. Under this payment plan, petitioners would not have to borrow against or sell their assets. Petitioners responded that they could not make the monthly payments, and respondent withdrew the offer.

Petitioners sold their Mercedes between June 1997 and October 1998, their one half interest in the jointly owned rental property between June 1997 and November 1999, and their Jeep between November 1998 and November 1999. They did not use the proceeds of these sales to pay any of their 1995 tax liability. In March 1999, petitioner borrowed $17,000 from his retirement account to consolidate other debts but did not use any of the loan proceeds to pay petitioners' 1995 tax liability.

On June 1, 1999, respondent issued a Notice of Intent to Levy and Notice of Your Right to a Hearing to petitioners. On June 17, 1999, petitioners requested and were granted a hearing. At the hearing, petitioners contended that reasonable cause existed to abate the addition to tax for failure to pay tax and interest. Petitioners requested that interest be abated because

respondent had misplaced their offer in compromise for 1 year. Following the hearing, respondent determined that the levy action should proceed and that interest should not be abated.

OPINION

A.   Whether the Tax Court Has Jurisdiction To Review Respondent's Determinations Under Section 6330

We first decide whether we have jurisdiction to review respondent's determination under section 6330 that reasonable cause does not exist to abate the addition to tax under section 6651(a)(2) for failure to pay the amount shown on petitioners' 1995 return.[3]  The Tax Court has jurisdiction to review lien and levy determinations under section 6330 if we generally have jurisdiction over the underlying tax liability.  Sec. 6330(d)(1)(A); Van Es v. Commissioner, 115 T.C. 324, 327 (2000); Moore v. Commissioner, 114 T.C. 171, 175 (2000).  Thus, we next consider whether, for purposes of section 6330(d)(1)(A), we generally have jurisdiction to review determinations that a taxpayer is liable for the addition to tax under section 6651(a)(2) for failure to pay tax.

In Estate of Young v. Commissioner, 81 T.C. 879, 883 (1983), we held that we lacked jurisdiction to decide whether the

_____

[3]   Neither party contends that we lack jurisdiction. However, the Court may consider sua sponte whether it has jurisdiction.  Moorhous v. Commissioner, 116 T.C. 263, 272 (2001); Neely v. Commissioner, 115 T.C. 287, 290 (2000); Smith v. Commissioner, 96 T.C. 10, 13-14 (1991).

taxpayer was liable for the addition to tax for late payment under section 6651(a)(2) even though we otherwise had jurisdiction to redetermine the taxpayer's liability for estate tax. Congress reversed that holding by inserting the word "any" in section 6214(a) as follows:

> SEC. 6214(a). Jurisdiction as to Increase of Deficiency, Additional Amounts, or Additions to the Tax.--Except as provided by section 7463 [small case procedures], the Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or <u>any</u> addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or a rehearing. [Emphasis added.]

Tax Reform Act of 1986, Pub. L. 99-514, sec. 1554(a), 100 Stat. 2754. The conference agreement which accompanied enactment of the 1986 amendment states, "The bill provides that the Tax Court has jurisdiction over this addition to tax for failure to pay an amount shown on the return where the Tax Court already has jurisdiction to redetermine a deficiency in tax with respect to that return." S. Rept. 99-313, at 200 (1986), 1986-3 C.B. (Vol. 3) 1, 200; H. Conf. Rept. 99-841, at II-804 (1986), 1986-3 C.B. (Vol. 4) 1, 804.

The Tax Court generally has jurisdiction over income, gift, and estate tax cases for purposes of section 6330(d)(1)(A) because we have deficiency jurisdiction relating to those taxes.

See secs. 6211(a), 6213(a), 6214(a); <u>Landry v. Commissioner</u>, 116 T.C. 60, 62 (2001); <u>Katz v. Commissioner</u>, 115 T.C. 329, 339 (2000); <u>Van Es v. Commissioner</u>, <u>supra</u> at 328; <u>Goza v. Commissioner</u>, 114 T.C. 176, 182 (2000). We also have jurisdiction "to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or a rehearing." Sec. 6214(a). Thus, just as we generally have jurisdiction to decide income, gift, and estate tax cases, we generally have jurisdiction over additions to tax for failure to pay those taxes for purposes of section 6330(d)(1)(A).

Following the 1986 amendment to section 6214(a), we have frequently exercised jurisdiction over the addition to tax under section 6651(a)(2) when it has been asserted in a deficiency case. See, e.g., <u>Lee Engg. Supply Co. v. Commissioner</u>, 101 T.C. 189, 196 n.5 (1993); <u>Estate of La Meres v. Commissioner</u>, 98 T.C. 294, 324-325 (1992); <u>Bank of the West v. Commissioner</u>, 93 T.C. 462, 472-474 (1989); <u>Judge v. Commissioner</u>, 88 T.C. 1175, 1187 (1987). In contrast, apart from an affected items proceeding, section 6665(b) provides that we lack deficiency jurisdiction over an addition to tax under section 6651(a) if no deficiency was determined. See <u>Estate of Forgey v. Commissioner</u>, 115 T.C. 142, 146-147 (2000); <u>Newby's Plastering, Inc. v. Commissioner</u>, T.C. Memo. 1998-320. However, our holdings in those cases do not

mean that we lack jurisdiction here. For purposes of section 6330(d), we may have jurisdiction over an underlying liability for income, estate, or gift tax whether or not we have or had deficiency jurisdiction in that case; the grant of jurisdiction to the Tax Court to review lien and levy determinations relating to such taxes is not limited to cases in which a notice of deficiency was issued or in which there is a deficiency. Sec. 6330(d)(1)(A); Landry v. Commissioner, supra at 62. The taxpayer in Landry opposed a levy on the grounds that he had paid the amounts in issue with excess tax withholdings from earlier years. However, even assuming that no notice of deficiency had been issued, and that the Tax Court would have lacked deficiency jurisdiction, we held that we had jurisdiction under section 6330(d)(1) because the underlying tax liability related to Federal income taxes over which we have jurisdiction. Landry v. Commissioner, supra.

We conclude that, for purposes of section 6330(d)(1), we generally have jurisdiction over the addition to tax under section 6651(a)(2). Thus, we conclude that we have jurisdiction to review respondent's determination under section 6330 that reasonable cause does not exist to excuse petitioners from liability for the addition to tax under section 6651(a)(2) for

failure to pay the amount shown on their return.[4]

B.   Whether Petitioners Had Reasonable Cause for Failure To Pay Their Income Tax for 1995

Respondent did not send a notice of deficiency to petitioners, and petitioners did not otherwise have an opportunity to dispute their tax liability for 1995.  Thus, petitioners may challenge the existence or amount of the underlying tax liability.  See sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, supra at 180-181.

Petitioners prepared their 1995 return and all of the offers in compromise.  Petitioners contend that their failure to pay tax was due to reasonable cause and not willful neglect because they thought their offers in compromise were fair.  We disagree.  A taxpayer has reasonable cause for failure to timely pay a tax if:

> the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship * * * if he paid on the due date.* * *  [Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.]

See also Valen Manufacturing Co. v. United States, 90 F.3d 1190,

---

[4] We have previously held that a taxpayer is liable for the addition to tax under sec. 6651(a)(2) in a lien and levy case where the record is not clear that the taxpayer received a notice of deficiency for 1 year, and no notices of deficiency were issued for the other 5 years in issue.  See Inman v. Commissioner, T.C. Memo. 2001-107.

1193 (6th Cir. 1996). An undue hardship will result to the taxpayer if, by paying on the due date, he or she will suffer a substantial financial loss; for example, a loss due to the sale of property at a distress price. See Fran Corp. v. United States, 164 F.3d 814, 816-817 (2d Cir. 1999). We review de novo whether petitioners are liable for the addition to tax for failure to pay tax. See Goza v. Commissioner, supra at 181-182.

Petitioners contend that they had reasonable cause for not paying their tax in 1995 because petitioner misunderstood the law relating to taxation of the capital gain received on the sale of their house. We disagree. Petitioner said that he did not receive a statement at closing showing the amount of sale proceeds from the house that would be reported to the IRS, but he did not say that he tried to obtain one. Petitioner's mistaken belief about the taxability of the gain from their house is not reasonable cause for failing to pay petitioners' 1995 tax, especially since petitioner did not consult an accountant or tax professional for advice regarding the 1995 return. See Henningsen v. Commissioner, 243 F.2d 954, 959 (4th Cir. 1957), affg. 26 T.C. 528 (1956). More importantly, we have difficulty understanding petitioners' argument since they concede that the tax liability they reported on the return is correct.

Petitioners contend that they had reasonable cause because they twice tried to get a second trust on their house (in October

1996 and February 1997) to provide funds to pay their 1995 tax liability but were turned down. We disagree. Petitioners had assets from which they could have paid their 1995 tax liability without undue hardship when they submitted their offers in compromise. They did not try to get a second trust until 6 months after they filed their 1995 return and submitted their initial offer in compromise.

In November 1998, respondent proposed a monthly payment plan to petitioners under which they would not have had to liquidate all of their assets or sell their cars, but petitioners claimed they could not afford to make the payments. Their claim that they could not afford the monthly payments is incredible because they sold two cars and petitioner's one-half interest in the rental property and borrowed $17,000 from petitioner's retirement account between June 1997 and November 1999. They did not use these proceeds to pay their remaining 1995 tax liability.

Petitioners did not follow the directions in Form 656, Offer in Compromise, for making an offer in compromise. Their offer of a small portion of their assets (equal to less than 20 percent of their 1995 tax liability) was not reasonable cause for failure to pay their 1995 tax. The instructions for Form 656 describe how to compute a minimum offer in compromise and state that the Commissioner will not process an offer not meeting those minimum requirements. Petitioners' offers did not meet these minimum

requirements because all of their offers were substantially less than the value of their available assets.

We conclude that petitioners are liable for the addition to tax under section 6651(a)(2) for failure to pay tax.

C.   Whether Respondent's Failure To Abate Interest Was an Abuse of Discretion

The parties stipulated that respondent misplaced petitioners' offer in compromise from about April 15, 1996, to April 16, 1997.[5]   The Commissioner may abate part or all of an assessment of interest on any deficiency or payment of income, gift, estate, and certain excise tax to the extent that any error or delay in payment is attributable to erroneous or dilatory performance of a ministerial act by an officer or employee of the Commissioner if:  (a) The erroneous or dilatory performance of the ministerial act occurred after the Commissioner notified the taxpayer in writing about the deficiency or payment, and (b) the taxpayer did not contribute significantly to the error or delay. See sec. 6404(e)(1).  We apply an abuse of discretion standard in reviewing the Commissioner's failure to abate interest.  Krugman v. Commissioner, 112 T.C. 230, 239 (1999); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  Petitioners contend that respondent's failure to abate interest that accrued during the

---

[5]  The burden of proof does not affect our disposition of this issue because no fact issue is in dispute relating to petitioners' claim.

period respondent misplaced petitioners' offer in compromise was an abuse of discretion. We disagree.

The conference committee report for the Tax Reform Act of 1986 states in pertinent part as follows: "If a taxpayer files a return but does not pay the taxes due, this provision would not permit abatement of this interest regardless of how long the IRS took to contact the taxpayer and request payment." H. Conf. Rept. 99-841 (Vol. II), at II-811 (1986), 1986-3 C.B. (Vol. 4) 1, 811. Thus, if the taxpayer files a return but does not pay the tax owed, section 6404(e) does not apply to interest that accrues on the unpaid tax before the Commissioner contacts the taxpayer in writing with respect to the tax. Petitioners filed their 1995 income tax return but paid nothing and proposed to pay only $5,000 of the $32,561 due. They seek an abatement of the interest that accrued on the unpaid tax before the Commissioner first contacted them in writing with regard to it. Section 6404(e) does not permit such an abatement in this case. Thus, we hold that respondent's failure to abate interest from April 15, 1996 (the date respondent misplaced petitioners' offer in compromise), to April 16, 1997 (the date respondent returned petitioners' $5,000 offer in compromise payment to them), was not an abuse of discretion.

Petitioners contend that respondent delayed in providing information about housing, utilities, and transportation expenses to be used in computing the offer in compromise. Petitioners

requested that information by letter dated December 26, 1997. Respondent provided that information to petitioners on January 8, 1998. The 2-week period in which respondent replied is not unreasonable delay.

D.  Conclusion

For the foregoing reasons, respondent's determination is sustained as to the addition to tax for failure to pay for 1995, and respondent's failure to abate interest from April 15, 1996, to April 16, 1997, was not an abuse of discretion.

Accordingly,

Decision will be

entered for respondent.