T.C. Summary Opinion 2009-143


UNITED STATES TAX COURT



PERRY LAMONT CROUCH III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25255-07S.               Filed September 16, 2009.


Perry Lamont Crouch III, pro se.

<u>Cindy Park</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise

indicated, subsequent section references are to the Internal Revenue Code as amended.

Petitioner seeks judicial review of respondent's determination to proceed with collection by levy of a tax liability for taxable year 2001. The issue for decision is whether respondent abused his discretion in sustaining the notice of intent to levy.[1]

## Background

Some of the facts have been stipulated, and we incorporate the stipulation and the accompanying exhibits by this reference. Petitioner lived in California when he filed the petition.

Petitioner worked as an "expert gang intervention specialist". He mediated gang disputes, attempting to resolve problems between rival gangs and between gangs and the residents of various California neighborhoods and communities. In 2001 petitioner was called to Moreno Valley after gang members took over a senior citizen complex. Petitioner helped to resolve the gang activity at that complex. He stayed in Moreno Valley during

---

[1]Respondent filed a motion for summary judgment. Summary judgment is a procedure designed to expedite litigation and avoid unnecessary, time-consuming, and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court scheduled the motion for hearing during the trial session. The Court concluded that holding a hearing on the motion would not expedite the resolution of this case. Thus, the case was submitted after petitioner testified and introduced evidence. Respondent's motion will be denied.

- 3 -

the resolution and received reimbursement for his expenses.  He then returned to his home in Los Angeles.

Petitioner did not timely file a tax return for taxable year 2001.  In 2003 respondent prepared a substitute for return for 2001.  On April 13, 2004, respondent mailed a notice of deficiency to petitioner, determining a $3,024 deficiency for taxable year 2001, but the U.S. Postal Service (USPS) returned the notice marked "forwarding order expired".  Respondent closed this notice of deficiency and did not assess the amount determined therein.[2]

On April 15, 2004, petitioner filed an amended return for 2001, and on August 17, 2004, he filed a second amended return for 2001.[3]

On September 22, 2005, respondent mailed a notice of deficiency for 2001 by certified mail to petitioner's last known address.  The address on this notice of deficiency is the same as the address petitioner listed on his petition.  The USPS did not return the September 22, 2005 notice of deficiency (hereinafter notice of deficiency) to respondent.  In the notice of deficiency

---

[2]From respondent's failure to assess the $3,024 deficiency, we presume that respondent concluded that the returned notice of deficiency was insufficient to support a valid assessment under secs. 6201(a) and 6212(a) and (b).

[3]The parties referred to the returns petitioner filed after the substitute return as amended returns.  For convenience, we will use their designation for these filings.

respondent explained that he denied petitioner's claimed business travel deduction because petitioner did not respond to respondent's request for supporting documentation. Respondent determined a $2,358 deficiency for taxable year 2001, together with a $352 addition to tax for petitioner's failure to timely file a 2001 Federal income tax return.[4] Petitioner did not petition this Court for redetermination of the deficiency, and respondent assessed the deficiency, together with interest and the late-filing addition to tax, on March 6, 2006. Respondent also issued a notice and demand for payment on March 6, 2006.

On a date not apparent from the record, petitioner requested audit reconsideration of the deficiency determination for taxable year 2001.[5] Respondent provided his final response to petitioner's request in a letter dated December 6, 2006, sent by certified mail, and stating in part: "We have disallowed your request for reconsideration, because you did not submit all the required documentation." The letter specifically stated that respondent requested a police or fire department report describing the fire petitioner claimed destroyed his 2001 tax

---

[4]The record includes a copy of this notice of deficiency.

[5]While the date of petitioner's request for audit reconsideration is unclear, a letter dated Aug. 28, 2006, from respondent to petitioner seeks information in addition to documents petitioner submitted on June 12, 2006. Thus, petitioner must have requested reconsideration on or before June 12, 2006.

records, but petitioner did not provide those documents. The IRS employee who signed the reconsideration denial letter held the position "Operations Manager, Examination". Petitioner did not claim this letter, and the USPS returned it, marked "unclaimed", to respondent.

Respondent issued a Notice of Intent to Levy and Notice of Your Right to a Hearing to petitioner, and petitioner timely requested a collection hearing. In his hearing request petitioner explained that his original receipts had been destroyed and that he provided the IRS with "the requested information" in 2006.

At the collection hearing petitioner challenged the underlying tax liability for 2001 and declined to discuss any collection alternatives. The settlement officer (SO) refused to address the underlying tax liability.

Respondent issued a notice of determination that recited: (1) The SO's verification that applicable legal and administrative procedures had been followed; (2) that respondent sent petitioner a notice of deficiency which the USPS did not return, which petitioner neither confirmed nor denied receiving, and from which petitioner did not file a petition for redetermination; (3) that petitioner's previous request for audit reconsideration was a prior opportunity to dispute the tax for 2001 and precluded his challenging the underlying liability in

the collection hearing; (4) that petitioner did not want to discuss or consider any collection alternatives; and (5) that collection by levy properly balances the need for efficient collection with petitioner's concern that the collection action be no more intrusive than necessary. Respondent sustained the notice of intent to levy.

In his petition seeking judicial review of respondent's determination to sustain the levy action, petitioner raised only challenges to the underlying tax liability.

At trial respondent's counsel stated that if the Court should decide that petitioner is eligible to challenge the underlying tax liability, then respondent would ask the Court to remand the case for Appeals Office consideration of the liability. As a result of this request, the trial focused on the section 6330 hearing and the notice of determination and did not address the existence or amount of the 2001 tax liability.

## Discussion

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand. Section 6330(a) requires the Secretary at least 30 days before beginning any levy to send a written notice to the taxpayer of the amount of the unpaid tax and of the taxpayer's right to a section 6330 hearing.

If the taxpayer requests a section 6330 hearing, a settlement officer or Appeals officer in the IRS's Appeals Office who has had no prior involvement with the unpaid taxes at issue conducts the hearing. Sec. 6330(b)(1), (3). At the hearing the officer shall obtain verification that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise any issue relevant to the unpaid tax or the proposed levy. Sec. 6330(c)(2)(A). The taxpayer may also challenge the existence or amount of the underlying tax liability, but only if he did not receive a statutory notice of deficiency or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B); Montgomery v. Commissioner, 122 T.C. 1 (2004). An opportunity to dispute the underlying liability that precludes a taxpayer from challenging the liability at the hearing includes a prior opportunity for a conference with the Appeals Office when the taxpayer availed himself of that opportunity. Perkins v. Commissioner, 129 T.C. 58, 63 (2007); Lewis v. Commissioner, 128 T.C. 48, 61 (2007); see also sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

After the hearing the officer must determine whether and how to proceed with collection and shall consider: (1) The administrative and procedural verification; (2) the relevant issues raised by the taxpayer; (3) where permitted, challenges to

the underlying tax liability; and (4) whether any proposed collection action properly balances the need for efficient collection of taxes with the taxpayer's legitimate concern that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

In reviewing a notice of determination sustaining a collection action, where the validity of the underlying tax liability is properly at issue, the Court reviews the determination of the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). If the Court finds that a taxpayer is liable for deficiencies, additions to tax, and/or penalties, then the administrative determination sustaining the collection action will be reviewed for abuse of discretion. See Downing v. Commissioner, 118 T.C. 22, 31 (2002); Godwin v. Commissioner, T.C. Memo. 2003-289, affd. 132 Fed. Appx. 785 (11th Cir. 2005). If the liability is not properly at issue, the Court reviews the administrative determination for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182. An abuse of discretion occurs when the exercise of discretion is without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 308 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

Section 6330(c)(4) expressly provides that a taxpayer, at a collection hearing before the Appeals Office, may not raise

issues that he previously raised and that were considered in a previous collection proceeding or in any other administrative or judicial proceeding in which he meaningfully participated. Magana v. Commissioner, 118 T.C. 488, 492 (2002); see also sec. 301.6330-1(e)(1), Proced. & Admin. Regs. Section 6330(c)(4) in effect codifies the legal doctrines of res judicata and collateral estoppel in their application to collection proceedings. Wooten v. Commissioner, T.C. Memo. 2003-113.

"Respondent has previously stated that 'Because section 6330(c)(2)(B) explicitly applies to challenges to tax liability, section 6330(c)(4) with its more stringent requirement of meaningful participation applies to non-liability issues.'" Lewis v. Commissioner, supra at 52 n.4 (quoting Office of Chief Counsel Notice CC-2003-016 at 20 (May 29, 2003) and noting that the Commissioner restated this position in Office of Chief Counsel Notice CC-2006-019 at 33 (Aug. 18, 2006)). Moreover, respondent has not argued section 6330(c)(4) as grounds to preclude petitioner's challenge to the underlying liability. Accordingly, we decide this issue solely with respect to section 6330(c)(2)(B). See id.

The SO refused to consider petitioner's challenge to the underlying tax liability on two grounds: (1) Respondent sent petitioner a notice of deficiency, and (2) petitioner's challenge to the liability was considered when he requested audit

reconsideration.  Respondent argues that petitioner's receipt of the notice of deficiency and participation in the audit reconsideration procedure each independently satisfy section 6330(c)(2)(B) and precludes petitioner's challenging the underlying tax liability during the section 6330 hearing.

There is no dispute that respondent mailed the notice of deficiency to petitioner's last known address or that the USPS did not return the notice to respondent.  Likewise, there is no dispute that petitioner meaningfully participated in the audit reconsideration he requested.  However, petitioner alleges that he did not actually receive the notice of deficiency, and he asserts that the decision made by a manager in an IRS examination function to reject his audit reconsideration request should not prevent him from having a fair opportunity for an impartial review of his underlying tax liability.

Although petitioner testified that his wife and stepdaughter were authorized to sign for his deliveries when he was away from home and trusted neighbors were authorized to sign for deliveries when the family was away, the record does not contain any evidence that anyone signed for the notice of deficiency. Petitioner claims he did not receive the notice of deficiency until the Taxpayer Advocate's office provided him with a copy in January 2008.  He testified credibly about consistently responding to mailings from the IRS (and the record supports his

diligence), and he explained that if he had received the notice of deficiency he surely would have timely responded.

Respondent demonstrated and the parties stipulated that respondent mailed the notice of deficiency to petitioner's last known address by certified mail.  However, respondent did not provide any evidence of delivery or actual receipt.  Respondent relies on the presumption of official regularity and argues that because the notice was properly addressed and deposited with the USPS as certified mail, it must have been delivered to petitioner.

The Commissioner is authorized to issue a notice of deficiency by mailing it using certified or registered mail to the taxpayer's last known address.  Sec. 6212(a) and (b).  The notice of deficiency is valid independent of receipt by the taxpayer.  See Pietanza v. Commissioner, 92 T.C. 729, 736 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991). The parties' stipulation satisfies the requirements of sections 6212 and 6213(a).  Thus, the notice of deficiency and the subsequent assessment are valid.

In contrast, under the plain language of section 6330(c)(2)(B) only actual receipt of the notice of deficiency will preclude a challenge to the underlying tax liability in a section 6330 hearing on the ground that a taxpayer had the chance

to petition this Court following his receipt of the notice of deficiency but failed to file the petition.

This is a close case. Respondent has no record of any returned receipt for the delivery of the notice of deficiency, and petitioner admits he authorized certain others to sign for his deliveries. Respondent did not present any direct evidence of receipt by petitioner or anyone who may have been authorized to receive his mail. Under the circumstances, specifically petitioner's credible testimony and his history of promptly responding to tax-related notices, we are not convinced that petitioner received the notice of deficiency. See Butti v. Commissioner, T.C. Memo. 2006-66. Petitioner has rebutted the presumption of delivery, and we hold that in the absence of any proof of actual delivery, the mailing of the notice of deficiency was not sufficient grounds for the SO to refuse to consider petitioner's challenge to the underlying tax liability during the section 6330 hearing.

Section 6330(c)(2)(B) is stated in the disjunctive; either receipt of a notice of deficiency or a prior opportunity to dispute the underlying liability will prevent a taxpayer's disputing the liability again during the section 6330 hearing. Thus, we must also consider whether petitioner had such an opportunity independent of the notice of deficiency.

It is unclear precisely when petitioner sought audit reconsideration or what triggered his request. See supra note 5. As indicated, respondent mailed the notice of deficiency on September 22, 2005, followed by a statutory notice of balance due and assessment on March 6, 2006. Sometime presumably in 2005 or 2006 petitioner requested audit reconsideration. Petitioner submitted some documentation on June 12, 2006, and respondent requested additional information regarding petitioner's allegedly destroyed records on August 28, 2006. Finally, an Examination operations manager denied petitioner's request for reconsideration on December 6, 2006, on the grounds that petitioner had not provided all the required information.

Respondent argues that the audit reconsideration petitioner requested was a prior opportunity to dispute his 2001 tax liability. There are two problems with this argument: (1) The audit reconsideration was not an independent review of petitioner's liability because the centralized reconsideration unit in the IRS Examination function and not the IRS Appeals Office handled the request for reconsideration; and (2) the letter respondent sent to petitioner at the end of the process indicates that respondent disallowed the request for reconsideration, not that he reviewed and affirmed the audit results. We presume, arguendo, that respondent denied petitioner's request because the documents he provided were

insufficient to change the deficiency determined in the notice of deficiency and that respondent provided petitioner an adequate opportunity to present his case for audit reconsideration.

However, we still must decide whether audit reconsideration by employees in the same operational unit (Examination Division) that prepared the substitute for return, examined petitioner's amended returns, and determined the deficiency for 2001 suffices as a prior opportunity to dispute the 2001 tax liability under section 6330(c)(2)(B).

Section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., is applicable for requests for section 6330 hearings made on or after November 16, 2006, and provides as follows:

> An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability. An opportunity for a conference with Appeals prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose.

It is apparent from the record that the IRS's centralized reconsideration unit, represented by an operations manager in the IRS Examinations function, handled petitioner's audit reconsideration request. Thus, we are satisfied that audit reconsideration did not provide petitioner with an opportunity for either an Appeals Office conference or Appeals Office consideration of his liability.

We concluded in Lewis v. Commissioner, 128 T.C. 48 (2007), that the legislative history of the Internal Revenue Service

Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3401, 112 Stat. 746, indicates that Congress intended to preclude taxpayers who were previously afforded a conference with the Appeals Office from raising their underlying liability again in a section 6330 hearing and before this Court.  We upheld section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., because the regulation implements the congressional mandate in a reasonable manner, and we stated that "we read sec. 6330(c)(2)(B) to allow a taxpayer who has had neither a conference with Appeals nor an opportunity for a conference with Appeals to raise the underlying liability in a collection review proceeding before Appeals and this Court."  Id. at 61 n.9; see also Montgomery v. Commissioner, 122 T.C. at 10 (taxpayers permitted to challenge their underlying tax liability where they did not receive a notice of deficiency or have an opportunity for Appeals Office consideration of their underlying tax liability).

Petitioner did not have an Appeals conference or an opportunity for an Appeals conference before the section 6330 hearing.  The audit reconsideration was not performed by the Appeals Office, and the SO did not permit petitioner to challenge the underlying tax liability during the section 6330 hearing.

Under the circumstances (nonreceipt of the notice of deficiency and no prior opportunity for Appeals Office consideration of the underlying tax liability), it was an abuse

of discretion for the SO to uphold the levy action without considering petitioner's challenge to his 2001 tax liability.

In appropriate circumstances we may remand a case to the Appeals Office to provide a hearing under section 6330(b). See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Harrell v. Commissioner, T.C. Memo. 2003-271. We will remand this case with instructions to respondent to offer petitioner an Appeals Office conference during which he may challenge the underlying tax liability for taxable year 2001.

An appropriate order will be issued.